UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CHRISTOPHER RYAN LINVILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:15-CV-138-REW |
| v. ) | |
| ) | MEMORANDUM OPINION AND |
| CAROLYN W. COLVIN, ACTING ) | ORDER |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers cross-motions for summary judgment under the District's standard briefing protocol. Plaintiff/Claimant, Christopher Ryan Linville, by counsel, appeals the Commissioner's denial of Title XVI supplemental security income benefits. The Court **GRANTS** the Commissioner's motion (DE #14) and **DENIES** Linville's motion (DE #13). The ALJ adequately justified his weighing of the various medical opinions. Substantial evidence supported his factual determinations and ultimate decision.

I.   Relevant Facts and Procedural Overview

Linville is 25 years old. *See* DE #11-1 (ALJ Hearing Decision), at 26.[1] He filed for supplemental security income on November 22, 2011, alleging a disability beginning on that same date. *Id.* at 15. He claimed that behavioral problems, ADHD, and asthma limited his ability to work. *Id.* (Disability Report), at 88-96. In May 2012, the Social Security Administration denied his initial claim for benefits. *Id.* (Disability Determination), at 28-40, 42-45. On May 24, 2012, between the initial denial and his request for reconsideration, Linville was in a significant

---
[1] All citations correspond to CM/ECF pagination.

1

motor vehicle accident. *Id.* (UK Healthcare Medical Records), at 315-16. He suffered a fractured pelvis, which required reconstruction of his right hip, and a puncture wound to his right thigh. *Id.* Following the week-long hospitalization, Linville amended his claim to include additional physical limitations allegedly resulting from the accident. *Id.* (Disability Report – Appeal), at 97-104. The Administration again denied SSI benefits upon reconsideration in May 2013. *Id.* at 41, 49-51. Pursuant to 20 C.F.R. § 416.1429 *et seq.,* Linville requested an administrative hearing, which Administrative Law Judge (ALJ) Ronald M. Kayser conducted on February 4, 2014. *Id.* at 15-27 (ALJ Hearing Decision). Following the hearing, the ALJ determined that Linville was not under a disability during the relevant period and denied his claim for SSI. *Id.* The Appeals Council denied Linville's request for review, precipitating the instant Complaint. *Id.* at 7 (Notice of Appeals Council Action denying request for review); DE #1 (Complaint).

In evaluating Linville's disability claim, the ALJ conducted the recognized five-step analysis. 20 C.F.R. § 416.920. The ALJ first determined that Linville had not engaged in substantial gainful activity, a defined term, since November, 22, 2011, his application date. DE #11-1 (ALJ Hearing Decision), at 17. Next, the ALJ found that Linville presented three severe impairments: (1) status/post fracture of the pelvis and reconstruction of the right hip; (2) attention deficit hyperactivity disorder (ADHD)/behavior; and (3) polysubstance abuse. *Id.* In the third step, the ALJ determined that Linville's severe impairments did not "meet[] or medically equal[] the severity of one of the listed impairments[.]" *Id.* In assessing Linville's residual functional capacity (RFC) (step 4), the ALJ concluded that Linville had "impairments that cause significant limitations but . . . those limitations are not so severe as to preclude him from meeting the demands of basic work activities" and made specific findings as to Linville's RFC. *Id.* at 19-26. The ALJ next found that Linville had no past relevant work making an evaluation of the

transferability of prior job skills unnecessary. *Id.* at 26. Under the final step, the ALJ found (taking into account the vocational expert's testimony) that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to the other work that exists in significant numbers in the national economy." *Id.* at 27. The ALJ thus concluded that Linville had not been under a disability, as defined in the Social Security Act, since November 22, 2011, the SSI filing date. *Id.*

Linville, by counsel, timely filed for review with the Appeals Council, which denied review. Plaintiff subsequently filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g).[2] Linville now moves for summary judgment, contending that the ALJ erred in evaluating the opinions of three examining medical providers. The Commissioner filed a cross-motion for summary judgment. The motions stand ripe and ready for review.

## II.     Standard of Review

Judicial review pursuant to § 405(g) is narrow. The Court confines itself to determining whether substantial evidence supported the ALJ's factual rulings and whether the Secretary properly applied the relevant legal standards. 42 U.S.C. § 405(g); *see also Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Per the Social Security Act's express terms, the Commissioner's findings are conclusive as to any fact supported by substantial evidence. 42 U.S.C. § 405(g); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). Substantial evidence is more than a mere scintilla and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Perales*, 91 S. Ct. at 1427);

---

[2] In Title XVI claims, the Court applies the same standard of review applicable to Title II claims as outlined in § 405(g). 42 U.S.C. § 1383(c)(3).

*see also Osborne v. Colvin*, No. 0:13-CV-174-EBA, 2014 WL 2506459, at *3 (E.D. Ky. June 3, 2014) (applying standard).

Given the limited nature of substantial evidence review, the Court does not try the case *de novo*, make credibility determinations, or resolve conflicts in the evidence. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Indeed, if substantial evidence exists to support the ALJ's decision, the reviewing court must affirm the ALJ "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotation marks omitted). The deferential standard creates for the Commissioner a "zone of choice," which, in the presence of adequately supportive evidence, is immune from Court interference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The Commissioner must, however, comply with the Agency's own procedural rules, and a prejudicial deviation from requisite procedures warrants remand. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

**III.  Analysis**

Plaintiff here alleges one claim of error—that the ALJ erroneously assigned limited weight to three[3] separate examining (but non-treating[4]) medical providers and improperly

---

[3] Linville does not challenge the limited weight assigned consultative examiner Naushad Haziq, M.D., because the examination occurred prior to Linville's motor vehicle accident. DE #13, at 7-8.

[4] The ALJ found: "The record contains no opinions from treating physicians indicating the claimant is disabled or has limitations greater than those determined in this decision." DE #11-1 (ALJ Hearing Decision), at 25. While Linville makes a general reference to the "medical source opinions of both the treating and consultative medical providers" in his "Statement of Legal Arguments," DE #13, at 3, he does not challenge this specific finding. An independent review of

4

credited the opinions of non-examining state agency medical providers. DE #13 (Motion). Per Linville, the ALJ "failed to adequately explain the basis for the weight assigned to the examining physicians and psychologists." *Id.* at 9. Ultimately, Linville criticizes, as inadequately supported, the ALJ's opinion weighing. *Id.* at 10. The Commissioner defends the ALJ's analysis as appropriate and supported by substantial evidence. DE #14 (Motion).

The implementing Social Security regulations describe 6 factors the Agency uses to "weigh medical opinions." 20 C.F.R. § 416.927(c)(1)-(6). Said factors include the examining relationship, treatment relationship, the length of treatment relationship and exam frequency, the nature and extent of the treatment relationship, consistency of the opinion as compared to the overall record, specialization, and other indicia of opinion validity. *Id.* With respect to the examining relationship, the regulation states: "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Id.* § 416.927(c)(1). However, unlike a treating source, an examining physician's opinions "are not entitled to any special deference." *Wesley v. Comm'r of Soc. Sec.*, 205 F.3d 1343, at *6 (6th Cir. 2000) (table) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Still, "[i]n weighing opinions of non-treating sources[5], Social Security regulations require the ALJ to apply the same level of scrutiny as afforded to treating source opinions. 'A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation[s] require[].'" *Lewis-Money v. Comm'r of Soc. Sec.*, No. 3:14CV261, 2015 WL 4465328, at *6 (S.D. Ohio Sept. 28, 2015) (quoting *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th cir. 2013)). Thus, the ALJ "should consider factors including

---

the administrative record by the Court confirms the absence of any opinions from treating physicians.

[5] Non-treating sources include both examining and non-examining medical providers.

5

the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Linville first challenges the ALJ's evaluation of the two examining psychologists, Geraldo Lima, Ph.D., and Cristi Hundley, Ph.D. Dr. Lima completed a mental status examination of Linville on April 14, 2012, prior to the motor vehicle accident. DE #11-1 (Lima Report), at 304-07. After interacting with Linville and administering various tests, Dr. Lima observed him to have an anxious affect and dysphoric mood and noted that Linville complained of difficulty sleeping and concentrating, impulsive behavior, and irritability. *Id.* at 306. Dr. Lima also noted that the results of Linville's REY-15 test "strongly suggest he is exaggerating his recent memory deficits." *Id.* Ultimately, Dr. Lima opined that Linville "is able to understand instructions and will not have trouble recalling those instructions. He is not able to complete tasks in a normal amount of time and is not likely to do well with supervisors and co-workers. His ability to manage stressors typically found at work is reduced." *Id.* at 307.

Dr. Hundley completed a similar mental status evaluation of Linville on February 13, 2013, post-accident. *Id.* (Hundley Report), at 410-412. She assessed Linville with post-traumatic stress disorder based on his description and noted his prognosis was poor absent future mental health treatment. *Id.* at 412. Ultimately, Dr. Hundley opined that Linville's "ability to understand and remember simple instructions is guarded and his ability to maintain attention and concentration is fair to guarded. His ability to interact appropriately in a work setting is guarded and his ability to handle the stresses typically associated with a work environment is guarded to poor given his description." *Id.*

6

In evaluating the examining psychologists' opinions, the ALJ considered the appropriate factors as required by Administration regulation. While Linville argues that the ALJ "failed to adequately explain the basis for the weight assigned to the examining . . . psychologists," DE #13, at 9, the ALJ, in fact, provided ample reasons for the limited weight assigned. The ALJ gave each opinion limited weight based primarily on evidence "that the claimant was less than forthright during both examinations." DE #11-1 (ALJ Hearing Decision), at 25. The ALJ carefully considered the entire record. DE #11-1, at 19, 24. He assigned weight only after methodically reviewing the examination record of each psychologist and identifying the specific evidence relied upon by each in arriving at the ultimate medical opinions. *Id.* at 21-23. The ALJ identified four specific reasons for assigning limited weight to Drs. Lima's and Hundley's opinions, addressing the substantiality of the evidence provided in support and its consistency with the overall record: (1) the REY-15 test results conducted by Dr. Lima "strongly suggested the claimant exaggerated recent memory deficits"[6]; (2) statements made by Linville to Dr. Hundley were inconsistent with the medical evidence in the record, namely, the inconsistency between Linville's claimed walker use and his lack of walker reliance during Dr. Hundley's evaluation[7]; (3) Linville's denial of any history of substance abuse[8]; and (4) the lack of objective

---

[6] Linville claims that the ALJ unfairly singled out his results on the REY test as a primary reason to doubt the scope of any mental impairment. DE #13, at 6. The REY test, and Dr. Lima's conclusion that the test strongly suggested exaggerated recent memory deficits, was a valuable confirmatory tool. The ALJ's focus on this measure, which Lima himself employed, was reasonable.

[7] Linville makes much of the fact that he "never told Dr. Hundley he used a walker at all times." DE #13, at 7. However, the ALJ merely cited the absence of walker use during the evaluation as one example of inconsistent statements made by Linville during the pendency of his application for benefits. While it may be a fair characterization that his symptoms, "like most peoples [sic], wax and wane over time[,]" *id.*, the intermittent use of a walker, and Linville's ability to function without one while claiming its necessity, is some evidence indicating Linville's questionable credibility with Hundley. The ALJ fairly cited Linville's lack of walker use as one basis to question the credibility of his other subjective complaints to the examining providers.

7

medical evidence supporting Dr. Hundley's assessment of Linville's PTSD diagnosis. *Id.* at 26. These stated reasons constitute substantial support for discounting the impairment levels cited by of Drs. Lima and Hundley.[9]

Because both Lima and Hundley predicated their views on Linville as a reliable historian and narrator, inconsistency (or worse, glaring revision or falsity) by Linville logically impacted the ALJ's perception of the validity of the psychologists' opinions. Linville was a long-time drug abuser, yet he denied any drug abuse history to Hundley. With Lima, Linville claimed he could not even read or write; yet, the REY-15 effort measure showed symptom exaggeration. The ALJ saw and rationally seized on signals of unreliability.

Linville objects strenuously to the ALJ's determination that Drs. Hundley's diagnosis of PTSD "was not supported by objective evidence." DE 13, at 7. He points to the consistency between Drs. Lima and Hundley's diagnoses as solidifying Hundley's findings and rather fliply asks, "What other objective evidence could there be in a mental health claim."[10] *Id.* The ALJ

---

[8] Linville's medical records, available to and reviewed by the ALJ, reveal a significant history of drug abuse. *See, e.g.*, DE #11-1 (Rivendell Behavioral Health Services Discharge Summary), at 200 (October 2007 inpatient drug treatment documenting daily marijuana use); *id*. (Ridge Behavioral Health System), at 226-228 (October-November 2007 inpatient treatment for polysubstance abuse including marijuana and alcohol); *id.* (Eastern State Hospital Records), at 301 (hospitalization following suspected suicide attempt documenting admitted prior use of marijuana, cocaine, and crystal methamphetamine); *id.* (UK Healthcare Records), at 331 (hospitalization following May 2012 motor vehicle accident documenting: "Patient now admits to a significant history of drug abuse").

[9] In objecting to the reasoning provided, Linville cites what he considers the ALJ's failure to provide "good reasons" for the weight given. DE #13, at 9 (citing *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011)). This standard, in the context of *Cole* and the regulations, only applies to *treating* providers and is not applicable here.

[10] Linville also puts great stock in each psychologist assigning him a Global Assessment of Functioning (GAF) score between 51-60. DE #13, at 5. The Court notes two things: First, GAF scores between 51-60 primarily indicate "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2000) (edition in print at time of both Lima's and Hundley's assessment of Linville). Second, "as stated by the Sixth Circuit, no 'statutory,

perceived Dr. Hundley's assessment of PTSD as shallow and based entirely on Linville's subjective statements made during the examination. DE #11-1 (Hundley Report), at 412. She designated her diagnosis of PTSD as "per description," a characteristic seized on by Dr. Ed Ross, the non-examining consulting psychologist, in assigning little weight to Hundley's PTSD assessment. DE #11-1 (Ross Report), at 429. Ross viewed as significant that Linville had no treatment history relative to PTSD and that Hundley accepted Linville's described symptomology without knowing he had omitted a substantial drug abuse record. The ALJ reasonably adopted these critiques.

Far from a "pretextual attempt to discard what is otherwise extremely relevant evidence," the ALJ's evaluation resulted from a proper analysis of Linville's subjective claims. While "[t]here is no question that subjective complaints of a claimant can support a claim for disability, . . . an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Importantly here, the ALJ made a credibility determination concerning Linville's subjective complaints. He cited "numerous inconsistencies and unsubstantiated allegations by the claimant" within the record, including Linville's periodic denials of an extensive history of substance abuse and his lack of current treatment for ADHD symptoms and poor memory. DE #11-1, (ALJ Hearing Decision), at 24. The Court defers to those rational determinations. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In light of the credibility determination and the other evidence in the record

---

regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place.'" *Kent v. Comm'r of Soc. Sec.*, No. 3:14-CV-285, 2015 WL 5693642, at *7 (S.D. Ohio Sept 29, 2015) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).

(including Dr. Ross's non-examining review), the ALJ provided sufficient and appropriate reasons for discounting the examining psychologists' opinions.[11]

Further, not only did the ALJ clearly articulate appropriate reasons for the weight assigned the psychologists' opinions, the RFC determination is supported, in relevant part, by substantial evidence. DE #11-1 (ALJ Hearing Decision), at 19. In fact, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 24. The RFC, reflecting a record closely analyzed, limits Linville to "simple, repetitive, one or two-step work in a low-stress, non-production, non-quota work environment" with limited "interaction with coworkers or supervisors, [and no] direct contact with the public." *Id.* The ALJ arrived at this conclusion while considering the entire record, the medical opinions of the examining and non-examining psychologists as noted, and the fact that "claimant communicated well and displayed no difficulties with memory or comprehension" during first-hand observation at the hearing. *Id.* at 24. While Linville would interpret the record differently and establish a more limiting RFC, substantial evidence supports the ALJ's findings. As such, the Court does not disturb them.

Linville also objects to the ALJ's evaluation of Dr. Ngo's opinions and the ALJ's reliance on the competing conclusions of non-examining physician, Dr. R.K. Brown. Dr. Ngo examined Linville on April 13, 2013, after the motor vehicle accident. DE #11-1 (Ngo Report),

---

[11] The ALJ catalogued these issues in detail. The noted deficiencies, some of which the Court already has discussed, included Linville's detected exaggeration in testing; his fanciful report as to weight loss; his unsupported report concerning wound scope and healing; his failure to divulge or misleading disclosures as to drug use and criminal history; and, his inconsistent or inaccurate reports as to hospitalizations. The ALJ personally observed Linville in the hearing and made credibility assessments and observations about Linville's memory and social interaction facility as a result of that hearing.

at 432. The general physical exam revealed that Linville had limited range of motion in his right hip (the hip fractured during the motor vehicle accident), secondary to pain, and in his lumbar spine. *Id.* Dr. Ngo noted that Linville had an "[a]ntalgic gait, [was] able to rise from a sitting position without assistance, [was] unable to stand on tiptoes, [completed] heels and tandem walk with problems[, and] was unable to bend and squat."[12] *Id.* at 433. Dr. Ngo further recorded that Linville complained of right hip pain, which was "exacerbat[ed] with exertions (walking and standing for more than 15 minutes)."[13] *Id.* at 432. Based on his observations, Dr. Ngo opined: "claimant should be able to sit for a full workday with frequent and adequate breaks, lift/carry objects with limitations secondary to pain, hold a conversation, respond appropriately to questions, carry out and remember instructions." *Id.* at 434. He further found that Linville was likely to have issues with standing consecutively for more than 15 minutes and recommended further pain control and physical therapy prior to returning to work. *Id.*

A medical records review by non-examining provider Dr. Brown, to which the ALJ gave "significant weight," mostly agreed with the conclusions reached by Dr. Ngo. DE #11-1 (Brown Report), at 445-46. He reviewed the movement limitations observed by Dr. Ngo and further noted that Linville moved without an assistive walking device. *Id.* at 442. Dr. Brown found Linville's alleged problems with "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, [and] stair climbing . . . partially credible per overall evidence as a whole." *Id.* at 445. He concurred with Dr. Ngo's assessment that Linville "should be able to sit for a full workday

---

[12] Dr. Ngo observed Linville's mental status as alert and oriented to his surroundings. DE #11-1 (Ngo Report), at 433. He described Linville as cooperative, not "depressed or anxious," as able to communicate with no deficits, having an intact recent and remote memory, and "[g]ood insight and cognitive function." *Id.* While these observations do not fall directly within the scope of Dr. Ngo's area of specialization, they provide additional evidence in support of the ALJ's assessment of Linville's mental RFC.

[13] As he did when meeting with Dr. Hundley, to Dr. Ngo, Linville wholly denied using illegal drugs. DE #11-1, at 432.

[with] frequent [and] adequate breaks" but found the 15 minute walking/standing restriction "not fully supported by the evidence as a whole." *Id.* at 446. He cited record evidence of Linville's ability to walk unassisted, sit without problems, and rise from a seated position without assistance to support his modified conclusion. Linville had "ambulate[d] without assistance" in Dr. Ngo's examination and reported as ADL independent. *Id.* (Ngo Report), at 432-33.

Again, as he did in evaluating the examining psychologists, the ALJ considered appropriate, relevant factors in assigning Dr. Brown's opinion greater weight, in relevant part, than Dr. Ngo's. He referenced three separate objective medical observations as the basis for departing from Dr. Ngo's more limited 15 minute walk/stand restriction, namely, that Linville evidently "could walk unassisted, sit for extended periods, and rise from a seated position without assistance." DE #11-1 (ALJ Hearing Decision), at 25. Given the objective evidence and the prior credibility finding,[14] the ALJ found that Linville could "stand/walk two hours out of an eight-hour workday, with the ability to exercise a sit/stand option every 35 to 60 minutes at his work station. He can sit for six hours out of an eight-hour workday." *Id.* at 19.

Linville's specific objection to the ALJ favoring Dr. Brown's opinion over Dr. Ngo's has two parts.[15] First, he claims that Dr. Brown did not dispute the findings of Dr. Ngo and further failed to address the sit/stand limitation provided in Dr. Ngo's report. DE #13, at 8. This is not borne out by the record. As mentioned above, the *only* relevant difference between Dr. Ngo's and Dr. Brown's opinions is the sit/stand limitation assigned. *Compare* DE #11-1 (Ngo Report), at 434, *with* DE #11-1 (Brown Report), at 446. While Dr. Brown does not dispute Dr. Ngo's

---

[14] Dr. Ngo called Linville "reliable," DE #11-1, at 432, but the litany of inconsistencies in the record objectively erodes confidence in that view.

[15] Linville's motion also claims that the ALJ erred when he disregarded the favorable opinions of a Dr. "Madden." DE #13, at 9. The Court conducted a thorough review of the record and could find no reference that name. The Court suspects Linville meant to reference Dr. Ngo.

12

objective findings, he does come to a different conclusion as to Linville's limitations. Second, Linville claims that "the opinions of a non-examining physician can never be afforded greater weight than that of an examining physician." DE #13, at 8. He makes this claim absent any citation to Administration regulation or case law. The claim is quite simply unfounded. *See* 20 C.F.R. § 416.927(c)(1) (stating the Commissioner will generally give more weight to examining physicians); *Ealy*, 594 F.3d at 514-15 (upholding as supported by substantial evidence the ALJ's decision to give more weight to a non-examining doctor's opinion than an examining doctor's); *Wesley*, 205 F.3d 1343, at *6. Every opinion receives consideration in light of the full record—that is what here occurred.

Further, and as above, substantial evidence supports the RFC determination regarding Linville's physical limitations. The ALJ's references to specific portions of the record constitute more than a simple statement that "the opinion is not supported by other evidence in the record." Further, and while Linville's more restrictive RFC interpretation based on Dr. Ngo's opinion may be defensible, the ALJ's RFC determination is itself a reasonable interpretation of the record as explained in his decision. Because substantial evidence supports the RFC's physical limitations, the Court must affirm. *Longworth*, 402 F.3d at 595.

Again, the Court carefully cabins its role to that required by the statute, which is highly protective of the ALJ's decisions when supported by substantial evidence. Dr. Brown, who reviewed the medical films and questioned Linville's reliability as a narrator (based, for example, on an asthma claim with no asthma treatment or current signs), rejected the degree of restriction Dr. Ngo suggested. The ALJ, which had developed a strong view that Linville was not a reliable provider of information, credited Dr. Brown's criticisms and embraced the restrictions Dr. Brown determined. The Court finds the analysis well-supported and easily within the "zone

13

of choice" allocated to the ALJ. The ALJ carefully evaluated Dr. Ngo's view, which the Court must remark it finds internally inconsistent as to the stand/walk issue,[16] and chose to rest on the other examiner. The Commissioner, via the ALJ, resolves evidence conflicts and makes credibility determinations. With adequate reasons undergirding the ALJ's choices here, all of which occurred under the appropriate standards, the ALJ's decision warrants deference. This results in judgment for the Commissioner.

## IV.     Conclusion

Having considered the full record, and for the reasons discussed above, the Court **GRANTS** the Commissioner's motion for summary judgment (DE #14) and **DENIES** Linville's motion for summary judgment (DE #13). The Court will enter a separate Judgment.

This the 5th day of July, 2016.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge

---

[16] Thus, Dr. Ngo says Linville can "sit for a full workday." Yet, per Dr. Ngo, he must alternate base posture with relief posture every 15 minutes (and with a relief posture that "must" be maintained for 15 minutes). The temporal calculations do not, in the Court's view, square. Again, the ALJ landed on the view of Dr. Brown, which the record substantially supports.